1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                No.  1:12-cr-00035-DAD-BAM

12                   Plaintiff,

13        v.                                   ORDER GRANTING DEFENDANT'S
                                               MOTION FOR COMPASSIONATE
14    BONNIE LYNNE RECINOS,                     RELEASE UNDER 18 U.S.C. § 3582

15                   Defendant.                (Doc. No. 121)

16

17          Pending before the court is defendant Bonnie Lynne Recinos's motion for a reduction of

18   her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is based upon the risks to

19   defendant posed by the ongoing coronavirus ("COVID-19") outbreak.  (Doc. No. 121.)  For the

20   reasons explained below, defendant's motion will be granted.

21                                     **BACKGROUND**

22          On April 10, 2017, following her plea of guilty to conspiracy to commit mail fraud and

23   wire fraud in violation of 18 U.S.C. § 1349, the court sentenced defendant Recinos to the custody

24   of the U.S. Bureau of Prisons ("BOP") for a 55-month term of imprisonment, to be followed by a

25   36-month term of supervised release.  (Doc. Nos. 48, 108, 109.)  The court also imposed the

26   mandatory $100 special assessment and ordered defendant to make restitution to the victims of

27   her fraudulent criminal conduct in the amount of $1,507,882.03.  (*Id*.)  Defendant is currently

28   /////

                                                1

1    serving her sentence at Federal Medical Center Carswell ("FMC Carswell") in Fort Worth, Texas.

2    (*See* Doc. Nos. 121 at 1; 130 at 3, 5.)

3        According to the government, defendant began serving her sentence of imprisonment on

4    September 6, 2017 and "has served approximately 32 months (59.1%) of the full sentence that

5    was imposed." (Doc. No. 130 at 3.)  According to defendant, she has served approximately 34

6    months of her sentence.  (Doc. No. 121 at 3.)  Both parties agree, however, that defendant's

7    current anticipated release date under her original sentence is December 16, 2020, "taking into

8    account [defendant's] qualifications for other BOP release programs." (Doc. No. 130 at 3; *see*

9    *also* Doc. No. 121 at 3.).

10        On May 21, 2020, defendant filed the pending motion for compassionate release pursuant

11    to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 121.)  On June 4, 2020, the government filed its

12    opposition to the motion, and on June 11, 2020, defendant filed her reply thereto.  (Doc. Nos.

13    130, 131.)

14                                    **LEGAL STANDARD**

15        A court generally "may not modify a term of imprisonment once it has been imposed."

16    18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment

17    of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

18    not be modified by a district court except in limited circumstances.").  Those limited

19    circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*,

20    __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020).  Prior to the enactment of the

21    First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the

22    BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may

23    now bring their own motions for compassionate release in the district court.  18 U.S.C.

24    § 3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may

25                upon motion of the defendant after the defendant has fully exhausted
                  all administrative rights to appeal a failure of the [BOP] to bring a

26

27    /////

28    /////

                                        2

motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

(i)    extraordinary and compelling reasons warrant such a reduction; or

(ii)   the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United*

_____

released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

1   *States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020);

2   *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7,

3   2020).

4                                        **ANALYSIS**

5           As district courts have summarized, in analyzing whether a defendant is entitled to

6   compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

7   defendant has satisfied three requirements:

8               First, as a threshold matter, the statute requires defendants to exhaust
                administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a
9               district court may grant compassionate release only if "extraordinary
                and compelling reasons warrant such a reduction" and "that such
10              reduction is consistent with applicable policy statements issued by
                the Sentencing Commission.  *Id.*  Third, the district court must also
11              consider "the factors set forth in Section 3553(a) to the extent that
                they are applicable."  *Id.*
12

13  *Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-

14  LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4;

15  *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

16  2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

17  "consistent with" the sentencing factors set forth in §3553(a)).

18  **A.      Administrative Exhaustion**

19          Here, the parties do not dispute that defendant has exhausted her administrative remedies

20  prior to filing her pending § 3582 motion.  (Doc. Nos. 130 at 4; 121 at 3.)  Accordingly, the court

21  will turn to the merits of defendant's motion.

22  **B.      Extraordinary And Compelling Reasons**

23          "Extraordinary and compelling reasons" warranting compassionate release may exist

24  based on a defendant's medical conditions, age and other related factors, family circumstances, or

25  "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other

26  reasons" was included in the policy statement at a time when only BOP could bring a

27  compassionate release motion, courts have agreed that it may be relied upon by defendants

28  bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-

                                             5

1    JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

2            Thus, the medical condition of a defendant may warrant compassionate release where he

3    or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life

4    trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a

5    specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive

6    examples of terminal illnesses that may warrant a compassionate release "include metastatic

7    solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced

8    dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

9    condition may warrant compassionate release, including when:

10            The defendant is

11            (I)   suffering from a serious physical or medical condition,

12            (II)  suffering from a serious functional or cognitive impairment, or

13            (III) experiencing deteriorating physical or mental health because of
                  the aging process,

14

15            that substantially diminishes the ability of the defendant to provide
              self-care within the environment of a correctional facility and from
              which he or she is not expected to recover.

16

17   *Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not

18   be sufficient to warrant compassionate release under ordinary circumstances, some courts have

19   concluded that the risks posed by COVID-19 tips the scale in favor of release in particular

20   situations.  *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at

21   *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably

22   extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and

23   rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.

24   But taken together, they warrant reducing his sentence.").

25            Compassionate release may also be warranted based on a defendant's age and other

26   related factors.  In these situations, "extraordinary and compelling reasons" exist where a

27   "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or

28   mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of

1   his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).  In

2   determining a defendant's projected release date, courts may take into account any "good time

3   credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18

4   U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788,

5   at *1 n.1 (N.D. Cal. Apr. 10, 2020).

6         Here, defendant Recinos argues that extraordinary and compelling reasons warranting her

7   compassionate release exist because of:  1) her age (59 years old); 2) her serious health problems;

8   3) and the conditions at FMC Carswell related to the COVID 19 pandemic.  Defendant asserts

9   that she "suffers from multiple sclerosis ("MS"), hypertension (high blood pressure), and

10  asthma," for which she takes medications daily, including an immunosuppressant drug to treat her

11  MS, and inhalers for her asthma.  (Doc. No. 121 at 7, 8 – sealed.)  Defendant contends that she is

12  "at a higher risk of contracting COVID-19 and developing severe complications and/or dying

13  from the disease," and because MS is incurable, she also "suffers a medical condition from which

14  she 'is not expected to recover.'"  (*Id*. at 9.)  In addition, defendant argues that "the conditions

15  reported at FMC Carswell, where a 30-year old inmate has already died from COVID-19, make it

16  impossible for [her] to adequately care for and protect herself despite her vulnerable condition."

17  (*Id*.)  Thus, defendant argues that she falls within the scope of the "medical condition scenario" in

18  the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  (*Id*. at 9–

19  10.)

20        The government counters that defendant's medical conditions are not recognized by the

21  Centers for Disease Control as high-risk factors for becoming severely ill from COVID-19.  (Doc.

22  No. 130 at 3–4.)  In particular, the government contends that it is not clear from defendant's

23  medical records that her asthma, which is recognized by the CDC as a high-risk factor, is severe

24  or even moderate.  (*Id*. at 9–10.)  The government also argues that MS and general hypertension

25  are not listed by the CDC as high-risk factors.  (*Id*. at 9–10.)  However, on June 25, 2020—after

26  the government filed its response—the CDC updated its list of risk factors, and hypertension is

27  now so listed.  *See People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control

28  and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ people-at-

1   higher-risk.html (last reviewed July 16, 2020).  Nevertheless, the government argues that having

2   these health conditions alone is not sufficient to warrant compassionate release.

3        In reply, defendant argues that her medical conditions are an extraordinary and compelling

4   reason warranting a reduction of her sentence because she faces "a much higher risk of suffering

5   severe illness or death from COVID-19" due to her comorbidity, her asthma (regardless of the

6   degree), and her incarceration.  (Doc. No. 131 at 2–6.)  Defendant contends that whether or not

7   her medical conditions are listed by the CDC as high risk factors is not consequential because the

8   CDC's "guidelines are everchanging," and that the government fails to "acknowledge that much

9   of what we know is consistently changing.  COVID-19 transmission, and those factors that puts

10  one at risk is a constantly moving target."  (*Id*. at 2.)  Defendant also contends that the

11  government has understated the substantial risks posed by her incarceration at FMC Carswell in

12  particular and that "it is very possible" that the inmate who died at FMC Carswell contracted

13  COVID-19 while at that prison.  (*Id*. at 6–7.)

14       In light of recent developments at FMC Carswell, the court finds this to be a close case as

15  to whether defendant has satisfied her burden of showing that "extraordinary and compelling

16  reasons" warrant compassionate release.  Hypertension and asthma, both of which defendant

17  suffers from, are high risk factors in connection with COVID-19 and there is no doubt that

18  defendant's multiple sclerosis condition is long-standing and serious.  Moreover, there has been

19  one death of a prisoner at FMC Carswell related to COVID-19, although that prisoner had

20  recently been transferred to that prison from a local jail and was immediately quarantined.  (Doc.

21  Nos. 130 at 5; 130-1 at 10.)  Most importantly from the court's point of view, when the

22  government filed its response to defendant's motion, there were no confirmed active COVID-19

23  cases among any prisoners or staff members at FMC Carswell.  (*See* Doc. No. 130 at 5.)

24  However, as of July 16, 2020, the BOP now reports that 177 prisoners and 3 staff members at that

25  prison are now confirmed as active COVID-19 cases.  *See* https://www.bop.gov/coronavirus/ (last

26  reviewed July 16, 2020).  Thus, it appears that the in a mere month and a half, the active COVID-

27  19 virus cases at FCM Carswell went from 0 to 180.  This development has convinced the court

28  that the defendant's medical conditions and the fact that some of those conditions place her at

8

1    higher risk of becoming seriously ill if infected by COVID-19, when considered in combination

2    with the outbreak of the virus at her institution of confinement, constitute extraordinary and

3    compelling reasons warranting a reduction of her sentence.

4    **C.      Consistency With the § 3553(a) Factors**

5           Finally, any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent

6    with the sentencing factors set forth in §3553(a). [4]  *Trent*, 2020 WL 1812242, at *2; *see also*

7    *Parker*, 2020 WL 2572525, at *11.

8           As noted above, defendant Recinos is currently serving a 55-month sentence on her

9    conviction for conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349.

10   The offense, in which she played an aggravating role, was an extremely serious one.  Defendant's

11   innocent victims lost over $1.5 million dollars due to her fraud.  Indeed, the government contends

12   because defendant "was a leader in an elaborate $1.5 million fraud scheme" that operated for

13   three years (Doc. No. 130 at 11–12) (citing U.S.S.G. § 1B1.13(2)), she is a danger to the

14   community and is not entitled to compassionate release.

15          At sentencing, defendant was found responsible for a loss amount in excess of $1.5

16   million and less than $3.5 million and to have been an organizer or leader in the fraudulent

17   investment conspiracy, resulting in an offense level of 26 under the Sentencing Guidelines

18   ("U.S.S.G.").  (Doc. No. 103 at 8.)  Given the defendant's complete lack of criminal history of

19   any kind she was a Category I criminal history, resulting in an advisory sentencing guideline

20   range calling for a term of imprisonment between 63 and 78 months.  (*Id*. at 17.)   Pursuant to the

21

22   [4] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court
shall consider:  the nature and circumstances of the offense and the history and characteristics of
23   the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote
respect for the law, provide just punishment for the offense, afford adequate deterrence, protect
24   the public from further crimes of the defendant and provide the defendant with needed
educational or vocational training, medical care, or other correctional treatment in the most
25   effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range
established for the applicable category of offense committed by the applicable category of
26   defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing
Commission; the need to avoid unwarranted sentence disparities among defendants with similar
27   records who have been found guilty of similar conduct; and the need to provide restitution to any
victims of the offense.
28

1    parties' plea agreement, the government argued for a sentence at the low end of the guidelines, 63

2    months.  (Doc. No. 107).  However, in the presentence report the probation officer recommended

3    that the court vary downward in consideration of the § 3553(a) factors to a sentence of 48 months

4    as providing just punishment for the offense as well as adequate deterrence, while potentially

5    allowing for the repayment of restitution.  (*Id*. at 16–18.)  In particular the mitigating

6    circumstances noted by the probation officer in recommending a downward variance included the

7    defendant's age, lack of prior arrest history or evidence of past criminal conduct, her significant

8    and serious medical problems requiring ongoing treatment and medication monitoring, and

9    favorable performance while under Pretrial Services supervision in this case.  (*Id*. at 16.)  The

10   probation officer also opined that "[i]f not for the ongoing nature of the offense conduct, the

11   current offense could be described as aberrant" and that "it appears unlikely [defendant] would be

12   involved in similar criminal conduct" in the future.  (*Id*.)  The undersigned ultimately did vary

13   downward in light of its consideration of the § 3553(a) factors, but only to a sentence of 55

14   months imprisonment.  (Doc Nos. 108, 109.)

15        In light of the presentence report's thoughtful analysis and recommendation, it cannot be

16   said that the granting of a sentence reduction in this case would be inconsistent with the factors

17   set out in § 3553(a).  The fact that the undersigned originally imposed a sentence with a slightly

18   less significant downward variance at the time of the original sentencing does not impact that

19   conclusion.  Moreover, "'[t]he length of the sentence remaining is an additional factor to consider

20   in any compassionate release analysis,' with a longer remaining sentence weighing against

21   granting any such motion."  *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL

22   2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, __ F. Supp. 3d __,

23   2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)).  Here, although defendant has served

24   approximately 60% of her originally imposed sentence, the parties agree that she qualifies for

25   other BOP release programs and is scheduled for release in just under 5 months from today.

26   Given her complete lack of criminal history and the other factors cited therein, there is also little

27   reason to question the presentence report's conclusion that defendant is unlikely to reoffend and

28   that her release would not pose a danger to the community.  Finally, no unwarranted sentencing

1    disparity would result from a reduction in defendant's sentence since her co-defendant, who was

2    less culpable than defendant in this criminal conspiracy, was sentenced to the custody of the BOP

3    for a six month term of imprisonment.  *See United States v. Jamil*, No. 1:15-cr-00264-LHK-4,

4    2020 WL 2614877 at *4 (N.D. Cal. May 21, 2020).

5                                              **CONCLUSION**

6            For the foregoing reasons, defendant's motion (Doc. No. 121) is granted.  The sentence

7    previously imposed of a 55-month term of imprisonment is reduced[5] to a sentence of 48-month

8    term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) and for the reasons explained above.

9    All terms and conditions of the previously imposed 36-month term of supervised release remain

10   in full force and effect.

11   IT IS SO ORDERED.

12       Dated:   __**July 20, 2020**__                    _____

13                                                              UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25   _____

26   [5]  Available relief under § 3582(c)(1)(A) includes both compassionate release as well as "a
     reduction in sentence."  *United States v. Parker*, __ F. Supp. 3d __, 2020 WL 2572525, at *1

27   (C.D. Cal. May 21, 2020) (quoting *United States v. Marks*, __ F. Supp. 3d ___, n.3, 2020 WL
     1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).  Here, the court reduces defendant's sentence in a

28   manner that, if the release date previously anticipated by the parties is correct, should result in
     defendant's immediate release from custody.

                                                    11